(853 P.2d 69)

No. 68,320

CLINTON ANDERSON, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant*.

Opinion filed May 28, 1993.

*Brian Cox*, of Kansas Department of Revenue, of Topeka, for appellant.

*John E. Stang*, of The Law Offices of Leslie F. Hulnick, P.A., of Wichita, for appellee.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

PIERRON, J.: The Kansas Department of Revenue (KDR) (respondent-appellant) appeals from a district court's decision finding that KDR did not obtain personal service upon Clinton Anderson (petitioner-appellee). The district court found KDR to be without jurisdiction and reinstated Anderson's driving privileges.

On December 13, 1991, KDR suspended Anderson's driver's license for one year based upon Anderson's refusal to take a breath test after being stopped on suspicion of driving while under the influence of alcohol. Anderson filed a petition for review of the administrative hearing order in district court.

The only matter at issue on appeal was whether the law enforcement officer's service of the DC-27 form to Anderson upon his refusal to submit to a breath test was proper. The case was submitted to the district court with the following stipulations:

"1. This matter is properly before this Court.

"2. The only issue is whether Petitioner was properly served with a copy of the DC-27.

"3. A copy of the DC-27 is attached hereto.

"4. Petitioner testifies that TSO Ronald Larson never personally served Petitioner with the DC-27.

"5. At the Administrative Hearing TSO Larson testified that he did not remember personally serving Petitioner with the DC-27.

"6. On January 29, 1992, TSO Larson testified that he does not remember personally serving Petitioner with the DC-27. Larson further testified that pursuant to his normal procedure, he would have either put said document in Petitioner's belongings or personally served Petitioner.

"7. The plaintiff received the form DC-27 simultaneous to his release from custody.

"8. The plaintiff understood all along the officer was alleging he had refused to submit to testing under the Implied Consent law.

"9. The plaintiff timely requested an administrative hearing.

"10. The plaintiff participated in the administrative hearing with an attorney and presented a defense to the allegation of refusal.

"11. Petitioner never appointed or authorized any of the Department of Corrections officers in Sedgwick County to receive service of process for Petitioner."

Neither Anderson nor Officer Larson testified before the district court.

The district court found in favor of Anderson, dismissing the case and reinstating his driving privileges. The court held that personal service of the DC-27 form is mandatory and must be made in accordance with K.S.A. 8-1002(c). The court further held: "Under the facts of this case, Petitioner was not personally served during the time he was in custody by the officer acting on behalf of Respondent, and service was invalid, causing jurisdiction not to attach." KDR timely appeals.

The controlling issues in this appeal are whether the district court erred in determining that personal service of the DC-27 form was required in order for KDR to have jurisdiction to suspend Anderson's driver's license and whether the doctrine of substantial compliance is applicable to K.S.A. 8-1002(c).

The district court based its decision to reinstate Anderson's driving privileges solely upon stipulated facts. As such, this court has de novo review of the decision. *In re Estate of Crawshaw,* 249 Kan. 388, 394, 819 P.2d 613 (1991). In addition, this court's review of conclusions of law is unlimited. *Gillespie v. Seymour,* 250 Kan. 123, 129, 823 P.2d 782 (1991).

K.S.A. 8-1002(c) provides in pertinent part:

"When the officer directing administration of the testing determines that a person has refused a test and the criteria of subsection (a)(1) have been met or determines that a person has failed a test and the criteria of subsection (a)(2) have been met, the officer shall serve upon the person notice of suspension of driving privileges pursuant to K.S.A. 8-1014, and amendments thereto. If the determination is made while the person is still in custody, service shall be made in person by the officer on behalf of the division of vehicles."

The district court found that, based upon the rationale in *Barnhart v. Kansas Dept. of Revenue,* 243 Kan. 209, 755 P.2d 1337 (1988), the personal service requirement in K.S.A. 8-1002(c) is mandatory. The court also held that, under *Barnhart,* substantial compliance would be insufficient in the present case because this notice sets in motion "the substantive administrative and judicial process by which a driver's license suspension determination is . . . made."

As a threshold matter, KDR argues this issue cannot be considered because it is not listed in K.S.A. 8-1002(h)(1), which limits the scope of the administrative hearing in a case of a test refusal to four issues: (A) whether the officer had reasonable grounds to believe the person was operating a motor vehicle under the influence; (B) whether the person was in custody; (C) whether the officer had presented the person with the oral and written notice required by K.S.A. 8-1001; and (D) whether the person refused to submit to and complete a test as requested by a law enforcement officer. K.S.A. 8-1002(h)(1) speaks only to substantive issues and does not attempt to limit procedural issues. Anderson is not precluded from raising the issue of personal service. See *Ostmeyer v. Kansas Dept. of Revenue,* 16 Kan. App. 2d 639, 640-41, 827 P.2d 780, *rev. denied* 250 Kan. 806 (1992) (court addressed procedural issues outside scope of K.S.A. 8-1002(h)(2), which similarly limits substantive defenses after a test failure).

The plain language of K.S.A. 8-1002(c) clearly and unambiguously contemplates personal service if the individual is still in custody. Moreover, the DC-27 form used in the present case states:

"A copy of this document which contains a Notice of Driver's License Suspension was served on the above named person on _____ 19____ by (Check one) ____ Personal Service ____ Mailing by First-Class Mail to the Above Address. NOTE: PERSONAL SERVICE IS REQUIRED IF THE DETERMINATION OF REFUSAL OR FAILURE IS MADE WHILE THE PERSON IS STILL IN CUSTODY."

Officer Larson filled in the date and checked the box indicating that personal service was made.

K.S.A. 1992 Supp. 60-303(c) defines personal service as follows: "Personal service shall be made by delivering or offering to deliver a copy of the process and accompanying documents to the person to be served." Anderson testified that Officer Larson never served him with the DC-27 form, and Larson could not remember personally serving Anderson. Larson further testified that, pursuant to his normal practice, he would either have put the document in Anderson's belongings or personally served him.

Anderson has the burden of proving the invalidity of the KDR's action. *Angle v. Kansas Dept. of Revenue,* 12 Kan. App. 2d 756, 761, 758 P.2d 226, *rev. denied* 243 Kan. 777 (1988). Under the facts of this case, it would appear that Larson did not personally serve Anderson with a copy of the DC-27 form as contemplated by K.S.A. 8-1002(c). See *State, Dep't of Mtr. Vehicles v. Pida,* 106 Nev. 897, 899, 803 P.2d 227 (1990) (officer's placement of order of license revocation in prisoner's property bag did not satisfy the applicable statute requiring personal service of the order upon the party whose license is revoked).

Anderson argues the present case is somewhat analogous to the factual situation presented in *Claus v. Kansas Dept. of Revenue,* 16 Kan. App. 2d 12, 825 P.2d 172 (1991). In *Claus,* Harold Claus mailed his petition for review of the order suspending his driver's license to the Driver Control Bureau of the Division of Vehicles rather than the Secretary of Revenue. 16 Kan. App. 2d at 13. KDR argued that service was improper because it was not made upon the "agency head" as required by statute. 16 Kan. App. 2d at 13-14.

The Court of Appeals ruled in favor of KDR. The court found that "[t]here are no provisions for 'substantial compliance' contained in the Act [for Judicial Review and Civil Enforcement of Agency Actions] comparable to those provided in the Rules of Civil Procedure by K.S.A. [1992] Supp. 60-304." 16 Kan. App. 2d at 13. The court held that, because service of Claus' petition for review of the order suspending his driver's license was improper, the district court and, thus, the appellate court had no jurisdiction over KDR. 16 Kan. App. 2d at 14.

Anderson argues that jurisdiction should be a two-way street; if KDR fails to properly serve a person with the form suspending his or her license, KDR would not have the authority to suspend the license. See *Meigs v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 537, 543, 825 P.2d 1175, *aff'd* 251 Kan. 677, 840 P.2d 448 (1992) (KDR's "failure to comply with and give all of the notices required by K.S.A. 1990 Supp. 8-1001(f)(1) divests the State of the authority to suspend a driver's license for refusal to undergo testing.").

KDR admits that, in all likelihood, Officer Larson did not hand the DC-27 form directly to Anderson but placed it with Anderson's belongings, and, when Anderson was released, he received the form along with his other personal items. KDR argues that personal service requires no more than this because Anderson got the form and must have been served. By so arguing, KDR ignores the plain language of K.S.A. 8-1002(c), which states: "If the determination [that a person refused a test] is made while the person is still in custody, service shall be made in person by the officer on behalf of the division of vehicles."

Assuming that Anderson was not properly served according to the statute, the question thus becomes whether substantial compliance is applicable and whether Officer Larson's actions were sufficient.

KDR contends that substantial compliance with K.S.A. 8-1002(c) should be deemed sufficient pursuant to the Kansas Supreme Court's decision in *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209.

In *Barnhart*, the appellant's driving privileges were suspended for failure to take a breath alcohol test. K.S.A. 1985 Supp. 8-1001(f)(1), the version of the statute then in effect, required that

the individual be advised that "after the completion of the testing, the person has the right to consult with an attorney and may secure additional testing, which, if desired, should be done as soon as possible and is customarily available from hospitals, medical laboratories and physicians." The notice that was actually given stated, " 'If you decide to submit to testing, after testing is completed you have the right to consult with an attorney and you may have additional testing done as soon as possible and as available.' " 243 Kan. at 211.

The *Barnhart* court held that "[t]he statute in question clearly requires that certain procedures shall be followed and certain notices shall be given to a defendant arrested for driving under the influence." 243 Kan. at 212. "The language of the statute is clearly mandatory." 243 Kan. at 212-13.

"However, the foregoing does not necessarily dispose of the case before us. As with any notice required by statute, the provisions of K.S.A. 1985 Supp. 8-1001(f) need not be given in the exact words of the statute. While using the statutory language would have negated the issue now before us, it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." 243 Kan. at 213.

The court went on to uphold the notice given by the officer as substantially complying with the mandatory notice requirement in the statute, concluding that "[a]bsent any showing of prejudice by appellant, the point lacks merit." 243 Kan. at 213-14.

In the present case, the trial court distinguished the notice provision at issue in *Barnhart* from K.S.A. 8-1002(c), finding that substantial compliance was inapplicable to the requirement of service.

"Substantial compliance with K.S.A. 8-1002(c) of the notice requirement to begin the suspension procedure is not sufficient, the statute being the legal basis for the entirety of the administrative and judicial proceedings dealing with the issue of suspension of license. The notice required pursuant to K.S.A. 8-1002(c) is the notice initiating the substantive procedures pursuant to that procedural framework so statutorily defined. It is a separate notice to be given following the notice and testing requirements of K.S.A. 8-1001(f). It is a unique statute specifically authorizing, for the obvious reason of convenience and efficacy, the arresting officer to serve notice of the suspension hearing initiation by suspension of the license as provided in K.S.A. 8-1002(c) *personally* on the driver whose license is sought to be

suspended. Pursuant to that unique procedure, the statute authorizes the officer to be acting '. . . on behalf of the Division of Vehicles.' It is *the* procedure setting in motion the substantive administrative and judicial process by which a driver's license suspension determination is to be made, the officer, in serving the notice, to be functioning as authorized process server on behalf of the authority of the State of Kansas to suspend the license. That is an entirely different context than the notice of pre-breath testing notice provided by K.S.A. 8-1001(f) with substantive impact of jurisdictional nature."

Anderson contends there is a vast distinction between the notice requirements of K.S.A. 8-1001(f), which advises the driver of certain rights, and the personal service requirement of K.S.A. 8-1002(c), which actually causes jurisdiction to attach in the proceeding.

The requirement of proper service is different from the requirement of proper notice of certain rights. K.S.A. 8-1002(c) is not a notice provision like that at issue in *Barnhart.* Instead, it provides for service of the order of suspension upon a driver, much like K.S.A. 77-615 provides for service of a petition for judicial review in accordance with subsection (d) of K.S.A. 77-613 upon the agency head or on any other person designated to receive service. See *Claus v. Kansas Dept. of Revenue,* 16 Kan. App. 2d at 13.

The Court of Appeals in *Claus* refused to apply the doctrine of substantial compliance to the actions of the appellant in serving the Driver Control Bureau rather than the Secretary of Revenue, even though both offices were located in the same building. 16 Kan. App. 2d at 13-14. Giving KDR the benefit of substantial compliance in the present case would seem patently unfair in light of the *Claus* decision. If *Barnhart* can be distinguished, there appears to be no authority to apply the doctrine of substantial compliance to K.S.A. 8-1002(c). See *Pork Motel, Corp. v. Kansas Dept. of Health & Environment,* 234 Kan. 374, 390, 673 P.2d 1126 (1983) (substantial compliance, as expressly allowed within chapter 60 of the Code of Civil Procedure, is not contained within chapter 20, so the procedure followed to obtain valid service in a contempt case must conform to the procedure described in chapter 20 or the court is without jurisdiction to proceed).

KDR argues that, even if service was improper in the present case, Anderson has suffered no prejudice as a result in the defect in service. Anderson stipulated that he understood all along the officer was alleging he had refused to submit to testing under the implied consent law, that he timely requested an administrative hearing, and that he participated in the administrative hearing with an attorney and presented a defense to the allegation of refusal.

Anderson argues that *Meigs v. Kansas Dept. of Revenue* is controlling on this issue. In *Meigs,* the Court of Appeals reasoned that the failure to give a person proper notice is prejudicial in and of itself. 16 Kan. App. 2d at 544. This reasoning was affirmed upon review by the Kansas Supreme Court. "Neither the statute [K.S.A. 8-1001(f)(1)] nor *Barnhart* imposes upon a plaintiff the additional burden of proving prejudice once it has been established that the notice did not substantially comply with the requirements of the statute." 251 Kan. at 682. However, because the present case involves a requirement of personal service rather than notice of certain rights, the rationale in *Meigs* and *Barnhart* may be of questionable use here.

In *Claus v. Kansas Dept. of Revenue,* KDR did not deny it received actual notice even though Claus served the Driver Control Bureau rather than the Secretary of Revenue. 16 Kan. App. 2d at 13. The Court of Appeals in deciding that case did not need to address the issue of whether KDR's failure to demonstrate any prejudice from the defect in service would prevent dismissal of the case on jurisdictional grounds.

KDR also directs this court to *State, Dep't of Mtr. Vehicles v. Pida,* 106 Nev. 897. In that case, Pida's driving privileges were suspended for refusing to submit to a breath test. By statute, the attending officer was then required to immediately serve an order of revocation of the license upon Pida. The officer completed the form revoking Pida's license, but, because Pida was confined in the jail, the officer gave a copy of the order to another corrections officer, who placed the document in Pida's property bag at the jail. The revocation of Pida's driving privileges was upheld by an administrative hearing officer but reversed upon judicial review. The district court held that the applicable statute required per-

sonal service and that placing the order in Pida's property bag was insufficient.

On appeal, the Nevada Supreme Court affirmed the findings that personal service was required and that the officer's actions did not amount to personal service. However, the court continued as follows:

"The record in this case reveals that Pida timely requested an administrative hearing after being released from jail. It is apparent, therefore, that he knew that his driving privileges had been revoked. Pida was represented by counsel at the hearing and was able to contest the order of revocation. Thus, this case proceeded just as if Pida had been personally served. We therefore conclude that under these particular facts, Pida was not prejudiced." 106 Nev. at 899.

The court reinstated the revocation of Pida's driving privileges.

Like Pida, Anderson timely requested an administrative hearing, he was fully aware that his driving privileges had been suspended, he was represented by counsel at the hearing, and he was able to contest the order of suspension. Presumably, K.S.A. 8-1002(c) requires personal service to guarantee that a person whose license has been suspended is aware of his or her right to appeal. The purpose of the statute was seemingly fulfilled in the present case.

However, in Kansas, pursuant to *Claus* and *Meigs* a "bright line" rule requires strict adherence to the legislative mandate of personal service.

Affirmed.